# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER DENYING DEFENDANTS'** |
| Plaintiff, | ) | **MOTIONS TO SUPPRESS** |
| | ) | |
| vs. | ) | |
| | ) | |
| Deandre Damon Jones and | ) | Case No. 1:19-cr-093 |
| En'Chante Nicole Thurmon, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court are the Defendants' motions to suppress filed on October 8, 2019. See Doc. Nos. 56 and 60. The Government filed responses in opposition to the motions on October 22, 2019. See Doc. Nos. 68 and 69. The Defendants filed reply briefs on October 29, 2019. See Doc. Nos. 79 and 80. A hearing on the motions was held on November 27, 2019. The parties filed post-hearing briefs on January 3, 2020. See Doc. Nos. 94-96. For the reasons set forth below, the motions are denied.

## I.    BACKGROUND

The Court held a suppression hearing on November 27, 2019. Four law enforcement officers testified at the hearing: Task Force Officer David Bjorndahl, Task Force Officer David Stewart, North Dakota Highway Patrol Sergeant Brian Mehlhoff, and North Dakota Highway Patrol Trooper Steven Clark. The factual background is derived from their testimony, as well as the law enforcement reports, affidavits, and dash camera footage in the record.

In January 2019, Deandre Jones and Dontavis Johnson, convicted felons prohibited from possessing firearms, were seen inside Runnings department store in Bismarck, North Dakota,

viewing handguns and attempting to locate extended magazines that fit those firearms. Following their departure from Runnings, Jones and Johnson were stopped by Bismarck police officers while traveling in a motor vehicle. The officers located two firearms, one under the driver's seat, where Johnson was seated, and one under the front passenger seat, where Jones was seated. These firearms were purchased by En'Chante Thurmon at HH Gun Shop in Bismarck. Jones was charged in North Dakota state court following this traffic stop with being a felon in possession of a firearm; he was released on bond.

Jones was interviewed by ATF agents following the traffic stop. During this interview, he admitted to being a member of the "Sex Money Murda" gang in the Atlanta, Georgia, area, and acknowledged having served prison time on a homicide charge. Jones' criminal history includes multiple felony convictions, including robbery and burglary; crimes of violence, including an arrest (although no conviction) for murder; crimes of obstruction; and crimes involving weapons, including prior weapons possession by a prohibited person. Jones' alias was identified as "Body Count" on his criminal history record.

On May 6, 2019, Task Force Officer David Stewart went to the residence of Greg and Cicely Johnson with a social worker who was interviewing the Johnsons. Cicely Johnson is Thurmon's mother. During this interview, Cicely Johnson called Thurmon and placed the call on speakerphone. Over speakerphone, Thurmon said that she and Jones were in Atlanta, Georgia, and would be returning to North Dakota soon. After the interview and as TFO Stewart was driving away, TFO Stewart noticed Cicely Johnson following him. TFO Stewart stopped and spoke with Johnson. Cicely Johnson stated that Jones was selling methamphetamine and heroin out of a trailer

2

in Bismarck, and that he would be bringing a large amount of heroin with him during the return trip to North Dakota.

Based on this information, TFO Stewart applied for and was granted a location monitoring warrant from the United States Magistrate Judge for the cell phone that Cicely Johnson had called during the interview. Using the information supplied from the cell phone service provider, TFO Stewart was able to determine that Thurmon and Jones were traveling back to North Dakota on May 9, 2019. Following a briefing with the investigative team, TFO Stewart and other law enforcement officials began surveillance on Interstate 94 for the vehicle Thurmon and Jones were traveling in. DEA agents in the Fargo area were the first officers to locate the vehicle; they followed it to Jamestown, informing TFO Stewart that the vehicle was traveling in excess of the posted speed limit. TFO Stewart maintained contact with the team of law enforcement officials throughout the investigation.

North Dakota Highway Patrol Sergeant Brian Mehlhoff and Trooper Steven Clark were stationed in Burleigh County near Bismarck, North Dakota, awaiting arrival of the vehicle. Sergeant Mehlhoff had conducted preliminary driver's license checks on both Thurmon and Jones, and discovered that Jones' driver's license was suspended, and Thurmon only had an instructional permit. Sergeant Mehlhoff testified that because an individual with an instructional permit requires the presence of a licensed driver, and Jones was not licensed at the time, Thurmon was not permitted to be driving the vehicle. Upon arrival of the vehicle in the area, Sergeant Mehlhoff captured the speed of the vehicle at 91 mph in a 75 mph zone. He could see that Thurmon was driving, which was in violation of her instructional permit. Sergeant Mehlhoff followed the vehicle,

and pulled up next to it to see if there was a child inside. Seeing none, he activated his emergency lights and stopped the vehicle.

Once the motor vehicle was stopped, law enforcement officers brandished firearms and Sergeant Mehlhoff ordered both Jones and Thurmon to exit the vehicle one at a time, and they were secured with handcuffs upon doing so. Thereafter, officers approached the vehicle and located a young child in the backseat. Officers also noted an odor of marijuana coming from the vehicle. Trooper Clark testified he smelled the odor while approaching the vehicle from the rear on the driver's side. TFO Bjorndahl testified he smelled the odor of marijuana as he was standing beside the vehicle on the passenger's side and while speaking with the child. Sergeant Mehlhoff testified that when he told Thurmon that the agents were searching the vehicle due to the odor of marijuana, she responded that it was the vape pen inside the vehicle that had emitted that odor. Upon searching, officers located marijuana inside the passenger compartment of the vehicle, and multiple "baggies" of cocaine in the trunk area, concealed inside a Goldfish snack crackers container.

Following the traffic stop, TFO Stewart contacted Cicely Johnson, who told him that she had just been inside Jones' and Thurmon's trailer and that she saw a handgun and ammunition in the trailer. TFO Stewart applied for and was granted a search warrant for the trailer by a state district court judge. Upon execution of this warrant, agents located a firearm, multiple rounds of ammunition, and controlled substances.

## II. LEGAL DISCUSSION

### A. STOP OF THE VEHICLE

Jones contends the stop of the vehicle on May 9, 2019, on Interstate 94 in North Dakota, was unlawful. The Government contends there were three independent bases for a lawful stop: speeding, violating an instructional permit, and engaging in drug trafficking.

Because a traffic stop constitutes a seizure under the Fourth Amendment, an officer must have probable cause or a reasonable suspicion that the vehicle or its occupants are involved in illegal activity before conducting a traffic stop. See United States v. Hollins, 685 F.3d 703, 705-06 (8th Cir. 2012); United States v. Payne, 534 F.3d 948, 951 (8th Cir. 2008). Courts assess reasonable suspicion from the point of view of the officer based upon the totality of the circumstances known to the officer at the time. United States v. Zamora-Lopez, 685 F.3d 787, 790 (8th Cir. 2012). A determination of whether probable cause or reasonable suspicion existed is not to be made with the benefit of hindsight, but rather by looking at what the officer reasonably knew at the time. Hollins, 685 F.3d at 706. A reasonable suspicion must be more than a hunch. See United States v. Walker, 555 F.3d 716, 719 (8th Cir. 2009).

It is well-established in the Eighth Circuit Court of Appeals that a traffic violation, no matter how minor, provides an officer with probable cause for a traffic stop. United States v. Coleman, 700 F.3d 329, 334 (8th Cir. 2012). "As long as an officer objectively has a reasonable basis for believing that the driver has breached a traffic law, the officer has probable cause to conduct a traffic stop." United States v. Coney, 456 F.3d 850, 856 (8th Cir. 2006) (internal quotations omitted). An officer's subjective intentions for making a traffic stop are irrelevant once he has

established probable cause based upon the observation of a traffic violation. United States v. Fuehrer, 844 F.3d 767, 772 (8th Cir. 2016).

The Court had the opportunity to carefully listen to Sergeant Mehlhoff at the suppression hearing. Sergeant Mehlhoff testified that he captured the speed of the vehicle driven by Thurmon on May 9, 2019, at 91 mph in a 75 mph zone, which is a violation of N.D.C.C. § 39-09-02. Further, he testified that he had conducted preliminary driver's license checks on both Thurmon and Jones prior to stopping the vehicle, and discovered that Jones' driver's license was suspended, and Thurmon only had an instructional permit. Sergeant Mehlhoff testified that because an individual with an instructional permit requires the presence of a licensed driver, and Jones was not licensed at the time, Thurmon was not permitted to be driving the vehicle. See N.D.C.C. § 39-06-04. Sergeant Mehlhoff's testimony was honest, straight-forward, and credible. The Court has no reason to believe his testimony regarding the traffic violations was anything less than truthful, and the testimony was unrefuted. Because either of these traffic violations serve as an independent basis to stop a vehicle, the Court need not determine whether the officers had reasonable suspicion of drug trafficking. Accordingly, the Court finds the stop of the vehicle was lawful.

### B. INTENSITY AND DURATION

The Defendants contend the officers increased the intensity of the traffic stop without reasonable suspicion and effectively arrested them without probable cause in violation of the Fourth Amendment. The Government maintains the actions of the police officers involved were lawful.

An investigative stop may turn into an arrest if the stop lasts for an unreasonably long time

or if officers use unreasonable force. United States v. Navarrete-Barron, 192 F.3d 786, 790 (8th Cir. 1999). There is no bright line of demarcation between investigative stops and arrests. United States v. Guevara, 731 F.3d 824, 831 (8th Cir. 2013). In determining whether a seizure is an investigatory stop or an arrest, the subjective intent of the officer is irrelevant if that intent is not communicated to the suspect. United States v. Bloomfield, 40 F.3d 910, 916 (8th Cir. 1994); United States v. Danielson, 728 F.2d 1143, 1146 (8th Cir. 1984). Although officers must use the least intrusive means of detention and investigation, in terms of scope and duration, that are reasonably necessary to achieve the purpose of the stop, officers may also take any steps that are reasonably necessary to protect their safety and maintain the status quo. Navarrete-Barron, 192 F.3d at 790. If necessary, an officer may brandish weapons, handcuff a suspect, and place him in a squad car without transforming an investigative stop into an arrest. See United States v. Robinson, 670 F.3d 874, 877 (8th Cir. 2012); United States v. Fisher, 364 F.3d 970, 973 (8th Cir. 2004).

In evaluating whether officers were justified in taking protective measures during an investigative stop, the Eighth Circuit has frequently said that officers may reasonably suspect that persons involved in drug transactions are armed. United States v. Newell, 596 F.3d 876, 880 (8th Cir. 2010); United States v. Ramires, 307 F.3d 713, 716 (8th Cir. 2002); Navarrete-Barron, 192 F.3d at 791; United States v. McMurray, 34 F.3d 1405, 1410 (8th Cir. 1994); United States v. Miller, 974 F.2d 953, 957 (8th Cir. 1992); United States v. Eisenberg, 807 F.2d 1446, 1451 (8th Cir. 1986). Further, confronting suspects in a motor vehicle is a situation that is "especially fraught with danger to police officers." United States v. Pajari, 715 F.2d 1378, 1383 (8th Cir. 1983).

Law enforcement officers were aware of Jones lengthy criminal history, which included

multiple felony convictions, including robbery and burglary; crimes of violence, including an arrest (although no conviction) for murder; obstruction of law enforcement officers; and crimes involving weapons, including prior weapons possession by a prohibited person. Officers were also aware of the Runnings incident and subsequent stop and search just four months prior in which Jones was charged with felon in possession of a firearm. Significantly, on that occasion in January 2019, firearms—purchased by Thurmon—had been located in the vehicle in which Jones was an occupant. In addition, TFO Stewart was informed by Thurmon's mother that Jones and Thurmon would be returning to North Dakota with drugs. See Newell, 596 F.3d at 880 (noting that officers may reasonably suspect that persons involved in drug transactions are armed); see also Pajari, 715 F.2d at 1383 (noting the particular danger associated with motor vehicle stops). Given this information, it was reasonable for law enforcement officers to utilize their service weapons and to place Jones and Thurmon in handcuffs in order to protect their safety and maintain the status quo as they initiated the investigative stop. Based upon the totality of the circumstances, the Court finds the stop was not excessively intensive and no *de facto* arrest occurred.

Jones briefly notes in his post-hearing brief that an affidavit from Cicely Johnson, which was attached to Jones' *pro se* request for a *Franks* hearing, denies the conversations between Cicely Johnson and TFO Stewart actually occurred on May 6, 2019 (leaving Cicely Johnson's residence) and May 9, 2019 (following the traffic stop). See Doc. No. 73-1. Cicely Johnson did not testify at the suppression hearing. The Court found TFO Stewart's testimony regarding his conversations with Cicely Johnson to be honest, straight-forward, and credible. The Court has no doubt these conversations occurred and has no credible reason to believe that TFO Stewart's testimony

regarding the content of these conversations was anything less than truthful.

The Court also finds the investigative stop did not last for an unreasonably long time prior to establishing probable cause to search the vehicle and arrest Jones and Thurmon. The officers immediately noted the odor of marijuana emanating from the vehicle upon approaching the vehicle. Thurmon had acknowledged the odor to the officers. This odor gave the officers probable cause to search the vehicle. Sergeant Mehlhoff testified, and the dash camera supports, that the search of the vehicle began within the first five minutes of the stop.

### C. SEARCH OF THE VEHICLE AND RESIDENCE

The Defendants contend the warrantless search of the vehicle on Interstate 94 on May 9, 2019, was unlawful. The Government contends the officers had probable cause to search the vehicle, rendering the search lawful.

The Fourth Amendment secures the persons, houses, papers, and effects of the people against unreasonable searches and seizures by the government. U.S. Const. amend. IV. The general rule is that the government must secure a warrant before conducting a search. United States v. Alberts, 721 F.2d 636, 638 (8th Cir. 1983). "Warrantless searches are presumptively unreasonable absent some exception to the warrant requirement." United States v. Kuenstler, 325 F.3d 1015, 1021 (8th Cir. 2003). One such exception is the automobile exception, which recognizes that law enforcement officers may conduct a warrantless search of a vehicle as long as the officers have probable cause to believe the vehicle contains contraband or other evidence of illegal activity. Chambers v. Maroney, 399 U.S. 42, 48-49 (1970); United States v. Fladten, 230 F.3d 1083, 1085

9

(8th Cir. 2000). The rationale for the automobile exception was the practical challenge of obtaining a warrant for a vehicle that could be quickly moved out of the jurisdiction. Carroll v. United States, 267 U.S. 132, 153 (1925). Since *Carroll*, the United States Supreme Court has identified an additional justification for the automobile exception: the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. South Dakota v. Opperman, 428 U.S. 364, 367 (1976). This reduced expectation of privacy is based, in part, upon the relative openness of a car's passenger compartment, Cardwell v. Lewis, 417 U.S. 583, 590 (1974), but the Supreme Court has also applied the automobile exception to searches of car trunks, Cady v. Dombrowski, 413 U.S. 433, 446 (1973), and other closed compartments. Chambers, 399 U.S. at 44. This is because the reduced expectation of privacy is also based upon the pervasive regulation of vehicles capable of traveling on the public highways. California v. Carney, 471 U.S. 386, 392 (1985).

It is well-established that when police have probable cause to search a vehicle, the Fourth Amendment does not require a warrant. See Pennsylvania v. Labron, 518 U.S. 938, 940 (1996). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." Fladten, 230 F.3d at 1085 (citing Illinois v. Gates, 462 U.S. 213, 238 (1983)). Once probable cause is established to search a vehicle, officers are justified in searching every part of the vehicle and its contents, including its trunk, that may conceal the object of the search. United States v. Ross, 456 U.S. 798, 825 (1982); Eisenberg, 807 F.3d at 1452. It is clear in the Eighth Circuit that the smell of marijuana in a vehicle establishes probable cause to search the vehicle for

drugs.  United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000).

In this case, several officers testified there was an odor of marijuana coming from the vehicle.  Trooper Clark testified he smelled the odor while approaching the vehicle from the rear on the driver's side.  TFO Bjorndahl testified he smelled the odor of marijuana as he was standing beside the vehicle on the passenger's side and while speaking with the child.  Sergeant Mehlhoff testified that when he told Thurmon that the agents were searching the vehicle due to the odor of marijuana, she responded that the odor was coming from a vape pen inside the vehicle.  The Court finds the officers' testimony regarding the odor of marijuana was credible.  Based on the odor of marijuana, the officers had probable cause to believe the vehicle contained marijuana—which it in fact did.  Accordingly, because the officers had more than sufficient probable cause, the search of the vehicle was lawful.

The Defendants also argue the search of the vehicle occurred prior to the officers smelling the odor of marijuana.  Specifically, they contend when TFO Bjorndahl inserted his head and torso into the vehicle an illegal search occurred and any subsequent evidence should be suppressed.  As noted above, based on the testimony of the officers, the Court finds the officers detected the odor of marijuana prior to searching the vehicle.  However, in the event that TFO Bjorndahl was the first to detect the odor of marijuana, and did not detect that scent until his head was already in the interior of the vehicle, the Court would still find suppression of the evidence unwarranted for several reasons.  First, because Trooper Clark testified he personally smelled the odor of marijuana while approaching the vehicle opposite of TFO Bjorndahl, discovery of the evidence was unrelated to any potential law enforcement misconduct.  Thus, an independent and untainted basis for

probable cause existed. See United States v. Cisneros-Gutierrez, 598 F.3d 997, 1005 (8th Cir. 2010); see also Wong Sun v. United States, 371 U.S. 471, 488 (1963) (recognizing the issue for suppression is whether "the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint"). Second, once the child—who was allegedly improperly secured in a child restraint in the backseat of a speeding vehicle—was left unattended, a community caretaking duty was instilled in law enforcement to secure the child. See United States v. Gemma, 818 F.3d 23, 32 (1st Cir. 2016). TFO Bjorndahl's actions of leaning into the vehicle and talking to the child were reasonable under the circumstances. See Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) (noting the touchstone of Fourth Amendment analysis is always "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security").

Finally, the subsequent search of Jones' and Thurmon's residence was equally valid. The search was done pursuant to a search warrant issued by a state district court judge and was based upon probable cause. The evidence seized from the motor vehicle was properly considered by the state judge as the evidence was properly seized. In addition, TFO Stewart obtained additional information from Cicely Johnson following the traffic stop. Specifically, that she had just been inside Jones' and Thurmon's trailer and she saw a handgun and ammunition in the trailer. By that time, based on the results of the vehicle search, Cicely Johnson's credibility had been bolstered even further. Thus, probable cause was sufficiently established within the affidavit submitted to the state judge for issuance of the search warrant. The subsequent search and discovery of drug and firearm evidence was lawful.

### III. CONCLUSION

The Court has carefully reviewed the entire record, the parties' arguments, the evidence presented at the suppression hearing, and the relevant case law. For the reasons outlined above, the motions to suppress (Doc. Nos. 56 and 60) are **DENIED**.

**IT IS SO ORDERED.**

Dated this 12th day of March, 2020.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court
